FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 10, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COLUMBIA RIVERKEEPER, a Washington non-profit corporation,<br><br>    Plaintiff<br><br>    v.<br><br>DARIGOLD INC., a Washington corporation,<br><br>    Defendant. | No. 1:25-CV-03114-SAB<br><br>**ORDER GRANTING MOTION FOR CONSENT DECREE** |

Before the Court is the parties' Joint Motion for Entry of Proposed Consent Decree, ECF No. 19. Plaintiff is represented by Brian Alan Knutsen and Emma Bruden. Defendants are represented by Veronica M. Keithley. The motion was considered without oral argument.

The parties have notified the Court that they have reached a settlement and request the Court enter the following Consent Decree in this matter.

Accordingly, **IT IS HEREBY ORDERED**:

1.      The parties' Joint Motion for Entry of Proposed Consent Decree, ECF No. 19, is **GRANTED**.

2.      All deadlines, motions, hearings, and the trial date are **STRICKEN**.

**ORDER GRANTING MOTION FOR CONSENT DECREE  # 1**

3.        The Court enters the Stipulated Consent Decree as follows:

## I. STIPULATIONS

Plaintiff Columbia Riverkeeper ("Riverkeeper") and Defendant Darigold, Inc. ("Darigold") agree and stipulate as follows:

1.        Darigold owns and operates an industrial facility located at or about 400 Alexander Road, Sunnyside, Washington 98944 (the "Facility");

2.        The Washington Department of Ecology ("Ecology") has authorized Darigold to discharge wastewater from the Facility subject to various terms and conditions under National Pollutant Discharge Elimination System ("NPDES") Permit No. WA0052078, which, with any modified or successor permit issued by Ecology for substantially similar discharges at the Facility, shall be referred to in this Consent Decree as the "Permit";

3.        Riverkeeper issued a notice of intent to sue letter dated May 1, 2025 ("Notice Letter"), and filed a Complaint on July 21, 2025 ("Complaint"), under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, alleging that Darigold is in violation of certain terms and conditions of the Permit;

4.        Riverkeeper's Complaint seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of litigation expenses including attorney and expert fees;

5.        Darigold represents that, since Riverkeeper filed its Complaint, Darigold has installed improved membranes to treat the effluent discharged from the Facility at Outfalls 001 and 004, which discharges consist primarily of condensate of whey water. Darigold believes that these improved treatment measures will be sufficient to ensure that discharges at Outfalls 001 and 004 comply with the Permit's numeric effluent limits for those discharges;

6.        Discharges from the Facility at Outfall 002 are made to the industrial wastewater treatment facility operated by the Port of Sunnyside. Darigold represents that it has requested that Ecology increase the Permit's

**ORDER GRANTING MOTION FOR CONSENT DECREE  # 2**

numeric effluent limitations for these discharges;

7. Riverkeeper and Darigold (individually a "Party" and collectively the "Parties") each acknowledge that it obtained the advice of its own independent legal counsel before agreeing to be bound by these Stipulations and the proposed Consent Decree below;

8. The Parties agree that settlement of this matter is in the best interest of the Parties and the public and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action;

9. The Parties stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding the claims and allegations set forth in Riverkeeper's Notice Letter and Complaint;

10. The Parties recognize that, pursuant to section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a CWA citizen suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency. Therefore, upon filing of this proposed Consent Decree by the Parties, Riverkeeper will serve copies of it upon those officials and make other such filings as required by the Court regarding that service and any response from the United States.

## II. ORDER AND DECREE

1. **Jurisdiction**. This Court has jurisdiction over Riverkeeper and Darigold and the subject matter of this action pursuant to section 505(A) of the Clean Water Act, 33 U.S.C. § 1365(a);

2. **Effective Date**. This Consent Decree shall take effect on the date it is entered as an Order of the Court (the "Effective Date");

3. **Termination Date**. This Consent Decree and all obligations under it shall terminate, without further action by either Party, either (a) three (3) years

**ORDER GRANTING MOTION FOR CONSENT DECREE  # 3**

after the Effective Date, or (b) upon Darigold's complete performance of the obligations in Consent Decree Paragraphs II.6.B, II.7, and II.9 and the payment obligations in Paragraph II.8 that are outstanding as of three years after the Effective Date, whichever occurs later (the "Termination Date");

4.    **Applicability**. The Parties are subject to and shall abide by the terms and conditions of this Consent Decree. This Consent Decree shall inure to the benefit of, and be binding upon, the Parties and their successors, assigns, officials, agents, representatives, officers, directors, and employees. Changes in the organizational form or status of a Party shall have no effect on the binding nature of this Consent Decree or its applicability, provided that, if Darigold, with Ecology's approval, voluntarily relinquishes the Permit, any remaining obligations under Consent Decree Paragraph II.6 as of that relinquishment date will cease to be applicable and the Consent Decree will terminate upon fulfillment of any outstanding obligations under Consent Decree Paragraphs II.7, II.8, and II.9.

5.    **No Admission of Liability**. This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication of fault, wrongdoing, misconduct or liability regarding any allegations by Riverkeeper in this case or of any fact or conclusion of law related to those allegations nor evidence of any fault, wrongdoing, misconduct or liability on the part of Darigold, its employees, directors, or officers. Darigold agrees to the terms and conditions in this Consent Decree in full and complete satisfaction of all claims covered by this Consent Decree;

6.    **Compliance Measures**.

A. **Document Sharing**. From the Effective Date until the Termination Date, Darigold shall, no later than thirty (30) days following each calendar quarter, send to Riverkeeper copies of all Permit-related documents that Darigold submits to or receives from Ecology during the previous calendar quarter. Darigold shall provide such documents

**ORDER GRANTING MOTION FOR CONSENT DECREE  # 4**

via e-mail to the e-mail addresses identified for Riverkeeper in Paragraph II.12 of this Consent Decree;

B. **Improvements at Outfall 002**. Darigold shall take the following steps to improve compliance with applicable numeric effluent limits for Outfall 002 established in the Permit:

    i. **Submission of Engineering Report**. Within three (3) months of Ecology's final decision on Darigold's pending request to increase the Permit's numeric effluent limits for Outfall 002 or within twelve (12) months of the Effective Date, whichever occurs first, Darigold shall submit to Ecology an engineering report ("Report") that is prepared by a licensed and qualified third-party engineer (the "Engineer"). The Report shall provide necessary specifications for one or more new Equalization Tank(s) and propose additional measures, if any, that the Engineer deems necessary, in their professional judgment, for the discharges at Outfall 002 to comply with all then-applicable numeric effluent limits under the Permit. Pursuant to the notice provision in Paragraph II.12 of this Consent Decree, Darigold shall provide Riverkeeper with a copy of the Report within fourteen (14) days of submitting the Report to Ecology;

    ii. **Securing Approval**. Following submission of the Report to Ecology, Darigold shall work diligently and in good faith with Ecology to secure Ecology's approval of the Report, including by revising or amending the Report as required by Ecology. Pursuant to the notice provision in Paragraph II.12 of this Consent Decree, Darigold shall notify Riverkeeper of, and provide Riverkeeper with any documentation of, Ecology's approval or denial of the Report with the reporting required

**ORDER GRANTING MOTION FOR CONSENT DECREE  # 5**

under Paragraph II.6.A of this Consent Decree;

    iii.  **Installation**. Within eighteen (18) months of Ecology's approval of the Report, Darigold shall fully implement the approved Report. Pursuant to the notice provision in Paragraph II.12 of this Consent Decree, Darigold shall notify Riverkeeper within fourteen (14) days of fully implementing the Report;

7.    **Environmental Benefit Project Payment**. Darigold shall pay the Confederated Tribes and Bands of the Yakama Nation two million dollars ($2,000,000) to be used for one or more projects benefiting water quality and/or aquatic habitat in the Columbia River basin, as described in Exhibit 1 to this Consent Decree, of which $1,000,000 is to be paid and mailed within thirty (30) days of the Effective Date and the remaining $1,000,000 is to be paid and mailed within one hundred and eighty (180) days of the Effective Date. Darigold shall make the payments required by this Paragraph by checks made payable and mailed to the Confederated Tribes and Bands of the Yakama Nation, P.O. Box 151, Toppenish, Washington 98948. The payments shall bear the notation "Columbia Riverkeeper / Darigold, Inc. Clean Water Act Settlement." Darigold shall notify Riverkeeper pursuant to the notice provision in Paragraph II.12 of this Consent Decree within one (1) business day of Darigold placing each payment required by this Paragraph in the possession of the United States Postal Service.

8.    **Additional Environmental Benefit Project Payments**. In addition to the payment required by Paragraph II.7 of this Consent Decree, Darigold shall make the following payments:

    A. **Daily Limit Exceedances**. Beginning with the first full calendar month that occurs sixty (60) days after the Effective Date and lasting for a total of eighteen (18) calendar months, and subject to Paragraph II.8.C of this Consent Decree, for each exceedance of a daily numeric effluent limit under the Permit by a discharge at Outfall 001 or Outfall

**ORDER GRANTING MOTION FOR CONSENT DECREE  # 6**

004, Darigold shall pay fifteen thousand dollars ($15,000) to the Confederated Tribes and Bands of the Yakama Nation;

B. **Monthly Limit Exceedances**. Beginning with the first full calendar month that occurs sixty (60) days after the Effective Date and lasting for a total of eighteen (18) calendar months, and subject to Paragraph II.8.C of this Consent Decree, for each exceedances of a monthly numeric effluent limit under the Permit by a discharge at Outfall 001 or Outfall 004, Darigold shall pay twenty five thousand dollars ($25,000) to the Confederated Tribes and Bands of the Yakama Nation;

C. **Payment Cap**. The combined payments required by Paragraphs II.8.A and II.8.B of this Consent Decree in any single calendar month shall not exceed a total of one hundred fifty thousand dollars ($150,000);

D. **Payment Requirements and Method**. Darigold shall make any payment required under Paragraphs II.8.A and II.8.B of this Consent Decree to the Confederated Tribes and Bands of the Yakama Nation for one or more projects benefiting water quality and/or aquatic habitat in the Columbia River basin, as described in Exhibit 1 to this Consent Decree. Such payments shall be mailed within thirty (30) days of the last day of the calendar month in which the discharge(s) requiring payment occurred. Darigold shall make any such payment by check made payable and mailed to the Confederated Tribes and Bands of the Yakama Nation, P.O. Box 151, Toppenish, Washington 98948. Any such payments shall bear the notation "Columbia Riverkeeper / Darigold, Inc. Clean Water Act Settlement." Darigold shall notify Riverkeeper pursuant to the notice provision in Paragraph II.12 of this Consent Decree within one (1) business day of Darigold

**ORDER GRANTING MOTION FOR CONSENT DECREE  # 7**

placing any payment required by this Paragraph in the possession of the United States Postal Service;

9. **Reimbursement of Litigation Expenses**. Within thirty (30) days of the Effective Date, Darigold shall pay Riverkeeper $141,580.38 for litigation expenses incurred in this matter. Darigold shall make the payment required by this Paragraph via electronic funds transfer to the Oregon IOLTA trust account maintained by Kampmeier & Knutsen, PLLC, Riverkeeper's attorneys in this case. By email dated April 6, 2026, Brian Knutsen, Riverkeeper's counsel, provided Veronica Keithley, Darigold's counsel, the bank account information needed to process the payment required by this Paragraph. Before finalizing the payment, Darigold shall contact an attorney at Kampmeier & Knutsen, PLLC via telephone to confirm the bank account number and routing number of the account designated to receive the payment required by this Paragraph. Darigold shall not direct the payment required by this Paragraph to any other bank account or recipient unless the Parties seek and the Court issues an order modifying this Paragraph of the Consent Decree. Darigold shall notify Riverkeeper pursuant to the notice provisions of Paragraph II.12 of this Consent Decree within one (1) business day of Darigold making the payment required by this Paragraph;

10.       **Release and Covenants Not to Sue**.

A. **Release of Claims**. As of the Effective Date, Riverkeeper releases all CWA claims alleged against Darigold in the Notice Letter and Complaint that accrue prior to and through the Effective Date that could be asserted against Darigold, its officers, directors, employees, shareholders, contractors, or agents, and all other claims, known or unknown, that accrue prior to and through the Effective Date related to violations of the Permit that could be asserted under the CWA against Darigold, its officers, directors, employees, shareholders,

**ORDER GRANTING MOTION FOR CONSENT DECREE  # 8**

contractors, or agents. These claims are released and dismissed with prejudice. Darigold's payments under Paragraph II.9 of the Consent Decree will be a full and complete satisfaction of any claims Riverkeeper has or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in this lawsuit as of the Effective Date;

B. **Covenant Not to Sue for Outfall 002 Discharges**. The Parties recognize that Darigold may continue to exceed the Permit's numeric effluent limits for Outfall 002 until such time as the Report required by Paragraph II.6.B.i of this Consent Decree is fully implemented. Accordingly, Riverkeeper covenants not to sue Darigold, either in a new action or through enforcement of this Consent Decree, for any exceedances of any numeric effluent limits for Outfall 002 under the Permit that occur before implementation of the Report as required under Paragraph II.6.B.iii of the Consent Decree or that occur within three (3) years of the Effective Date, whichever occurs first;

C. **Covenant Not to Sue for Outfalls 001 and 004 Discharges**. Riverkeeper further covenants not to sue Darigold, in either a new action or through enforcement of this Consent Decree, for any exceedances of numeric effluent limits for Outfall 001 or Outfall 004 under the Permit that occur prior to or during the time period that discharges from Outfall 001 and Outfall 004 are subject to the payment requirements of Paragraph II.8 of this Consent Decree. Riverkeeper's sole remedy for any such exceedances shall be enforcement of the payment requirements under Paragraph II.8 of this Consent Decree;

11.     **Retention of Jurisdiction and Dispute Resolution**. This Court retains jurisdiction over this matter to oversee and ensure compliance with this

**ORDER GRANTING MOTION FOR CONSENT DECREE # 9**

Consent Decree. While this Consent Decree remains in force, the Parties may reopen this case without filing fee to apply to the Court for any further order or relief that may be necessary regarding compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree.

12.    **Notice**. All notices and other communications regarding this Consent Decree shall be in writing and made by sending an email to the following addresses, or to such other addresses as the Parties may designate by written notice:

For Plaintiff Columbia Riverkeeper:

Teryn Yazdani

Columbia Riverkeeper

teryn@columbiariverkeeper.org

**With a copy to:**

Brian Knutsen

Kampmeier & Knutsen, PLLC brian@kampmeierknutsen.com

For Defendant Darigold, Inc.:

Kristi Keene

Darigold, Inc.

kristi.keene@darigold.com

**With a copy to:**

Veronica Keithley

Stoel Rives LLP

veronica.keithley@stoel.com

13.    **Voidability**. If for any reason the Court should decline to enter this proposed Consent Decree as an Order of the Court in the form presented, the Consent Decree and the settlement embodied herein shall be voidable at the sole discretion of either Party. If voided, the Parties may resume litigation or continue negotiations in an attempt to cure any objections raised by the Court to entry of this

**ORDER GRANTING MOTION FOR CONSENT DECREE** # 10

Consent Decree;

14. **Force Majeure**. A force majeure is any event outside of the reasonable control of Darigold that prevents or causes a delay in performing any task required by this Consent Decree that cannot be cured by due diligence. By way of example and not limitation, force majeure events include:

i. Acts of God, war, insurrection, or civil disturbance;

ii. Earthquakes, landslides, fire, floods;

iii. Action or inaction of third parties over which Darigold has no or limited control;

iv. Unusually adverse weather conditions;

v. Restraint by court order or order of public authority;

vi. Strikes;

vii. Any permit or other approval sought by Darigold from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed and where Darigold has timely and in good faith sought the permit or approval;

viii. Litigation, arbitration, or mediation that causes delay;

ix. Epidemics and pandemics; and

x. Supply chain issues and delays.

If Darigold becomes aware of a force majeure event that causes or threatens to cause a delay in performance or prevent performance of a task required by this Consent Decree, Darigold shall notify Riverkeeper as soon as reasonably possible but, in any case, no later than fifteen (15) days after Darigold becomes aware of the force majeure event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

A. **Delay in Performance**. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a

**ORDER GRANTING MOTION FOR CONSENT DECREE**  # 11

failure to comply with the terms of the Consent Decree, provided that Darigold timely notifies Riverkeeper of the event, the steps that Darigold will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to water quality resulting from delay in completing the task.

B. **Prevention of Performance**. Prevention of performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree provided that: 1) Darigold timely notifies Riverkeeper of the event; 2) within fifteen (15) days of Darigold notifying Riverkeeper of the event, the Parties meet and confer to negotiate in good faith action(s) for Darigold to implement to substitute for the task prevented by the force majeure event ("Parties' Conferral"); and 3) within fifteen (15) days of the Parties' Conferral, the Parties memorialize the action(s) identified in the Parties' Conferral in a written document. Neither Riverkeeper nor Darigold shall unreasonably withhold agreement to the substitute action(s).

15. **Entirety of Agreement**. This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, written or verbal;

16. **Modifications**. This Consent Decree may only be modified upon a writing signed by representatives for each Party and approved by the Court; and

17. **Terms Severable**. If, after entry of this Consent Decree, any term, covenant, or condition of this Consent Decree is subsequently held to be invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision included in this Consent Decree. This Consent Decree shall be construed as if such invalid or unenforceable provision had never been contained in

**ORDER GRANTING MOTION FOR CONSENT DECREE** # 12

this Consent Decree.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this this 10th day of June 2026.

_____
Stan Bastian
Chief United States District Judge

**ORDER GRANTING MOTION FOR CONSENT DECREE** # 13